UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COURTNEY LANDRY, JOHNNY | * | NUMBER 2:20-CV--02630 |
| JACOB LANDRY, BOTH INDIVIDUALLY | * | |
| AND ON BEHALF OF THEIR MINOR | * | SECTION B(4) |
| CHILDREN, C.L., J.L., AND L.L. | * | |
| Plaintiffs | * | JUDGE IVAN L.R. LEMELLE |
| | * | |
| VERSUS | * | MAGISTRATE JUDGE KAREN WELLS ROBY |
| | * | |
| MARKETA GARNER WALTERS, IN HER | * | |
| OFFICIAL CAPACITY AS SECRETARY OF | * | |
| THE LOUISIANA STATE DEPARTMENT OF | * | |
| CHILDREN AND FAMILY SERVICES, AND | * | |
| TROY THOMAS | * | |
| Defendants | * | |

************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Defendants, Marketa Garner Walters, named in her official capacity as the Secretary of

the State of Louisiana Department of Children and Family Services ("DCFS"), and Troy Thomas,

an adoption case worker employed by DCFS, submit this memorandum in support of their

motion to dismiss all claims asserted in the Verified Complaint of Plaintiffs, Courtney Landry

and Johnny Jacob Landry, both individually and on behalf of their minor children, C.L., J.L., and

L.L.

As set forth herein, all claims against Walters must be dismissed pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure because a claim against a State official acting in

her official capacity is equivalent to a claim against the sovereign State of Louisiana itself,

{01133492 - v1}

against which the State asserts sovereign immunity under the Eleventh Amendment of the U.S. Constitution.

Further, all claims against Thomas must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on Plaintiffs' failure to state a claim upon which relief can be granted.  Plaintiffs allege no facts through which Thomas individually could have violated their First Amendment rights or chilled their rights to free speech.  Even if she arguably did, she is entitled to qualified immunity.  Plaintiffs' claims of intentional infliction of emotional distress against Thomas fail because her alleged conduct falls well short of the extremely high threshold for such claims.  Finally, Plaintiffs' claims of negligent infliction of emotional distress by Thomas fail because Plaintiffs sustained no physical injuries and their claims do not fall within the "special circumstances" necessary to proceed with the claim.

### RELEVANT FACTS ALLEGED IN THE COMPLAINT[1]

DCFS is a Louisiana state agency whose mission focus is that of child welfare throughout the State.  DCFS services include the placement of children in its custody in temporary foster family homes pending placement in permanent homes of those children who are legally eligible for adoption.

Plaintiffs Jacob and Courtney Landry were certified by DCFS for foster family home placement in 2018.[2]  On August 28, 2018, a child (referred to in the complaint as "Baby Z") was born in Louisiana addicted to numerous drugs, was taken into the protective custody of DCFS,

---

[1] Under the relevant standard for review under Rule 12(b)(6), the Court is directed to accept well-pleaded factual allegations as true.  See, e.g., *Lincoln v. Mendler*, 2018 U.S. Dist. LEXIS 150018, at *3 (E.D.La. Aug. 31, 2018) (Lemelle, J.).  Defendants recite the facts herein sonly to recap what has been alleged in this complaint, not to endorse or accept the veracity of the alleged facts.

[2] R.Doc. 1., ¶ 17.

{01133492 - v1}                                           2

and was hospitalized in a NICU for 51 days, through October 19, 2018.[3]   On September 15,

2018, Baby Z's father died while the child was still in the NICU.[4]   The child's mother, who had a

history of substance abuse, entered a Residential Recovery Program in November 2018.[5]   On

October 19, 2018, DCFS placed Baby Z in the foster family home of the Landrys.[6]

The original plan of DCFS was to return Baby Z to the custody of his mother following

her rehab from substance abuse.[7]   Unfortunately, the child's mother died on February 3, 2019.[8]

According to the Complaint, DCFS was then ordered to explore placement for the child.[9]   DCFS

indicated that it was exploring the placement of the child with a paternal half-uncle living in

New York.[10]   A DCFS caseworker, Gerriane Jones (who is not named as a defendant), allegedly

informed the Landrys that the uncle was not interested in adoption.[11]   The Landrys allege that,

unbeknownst to them, the uncle apparently had expressed a desire to adopt the child to Ms.

Jones all along but the Landrys believed that they would instead be allowed to adopt the

child.[12]   The uncle then formally intervened in the Jefferson Parish Juvenile Court action on June

26, 2019, in an attempt to gain custody of the child.[13]

The first allegation of any kind against Troy Thomas specifically is that she allegedly

failed to inform the Landrys of the uncle's intervention and a court hearing in a text message.[14]

---

[3] *Id.*, ¶¶ 11-12.
[4] *Id.*, ¶ 13.
[5] *Id.*, ¶ 14.
[6] *Id.*, ¶ 17.
[7] *Id.*, ¶ 18.
[8] *Id.*, ¶ 21.
[9] *Id.*, ¶ 22.
[10] *Id.*
[11] *Id.*, ¶ 25.
[12] *Id.*, ¶¶ 33-34.
[13] *Id.*, ¶ 35.
[14] *Id.*, ¶¶ 36, 38.  While it is not clearly stated by Plaintiffs in the Complaint, Ms. Thomas was not involved with Baby Z's case prior to June 21, 2019.

DCFS then moved to place Baby Z in the custody of his uncle in New York, who also had custody of a brother of Baby Z.[15]   Thomas informed the Landrys on July 30, 2019, that the uncle would visit the child.[16]   Thomas is alleged to have represented that the visit between the child and uncle went well, but the Landrys disagreed with that characterization.[17]   Thomas is then alleged to have told the Landrys that they were not allowed to be represented by their own counsel in the adoption proceeding, which they allege is contradicted by an unspecified provision of the Louisiana Children's Code.[18]

The Landrys allege that DCFS contracted with the Tulane Parenting Education Program ("TPEP") to assist in certain cases (though they do not allege that TPEP was contracted by DCFS to assist in Baby Z's case).[19]   The Landrys allege that the executive director of TPEP opined that Baby Z should not be immediately transferred to New York and instead recommended a "planful, deliberate transition."[20]   The Landrys allege that they asked for a mental health professional to be involved in the transition and that Thomas allegedly "lied and said she was in contact with members of the TPEP staff[.]"[21]   The Landrys wrote a letter to the Juvenile Court judge expressing concerns about Baby Z's transition to New York.[22]   The court ordered that Baby Z travel to New York to visit the uncle, and the Landrys allege that Thomas "minimize[ed]" issues that the child had during travel.

---

[15] *Id.*, ¶ 40.
[16] *Id.*, ¶ 43.
[17] *Id.*, ¶ 44.
[18] *Id.*, ¶ 45.
[19] *Id.*, ¶ 54.
[20] *Id.*, ¶ 54.
[21] *Id.*, ¶ 55.
[22] *Id.*, ¶ 56.

{01133492 - v1}                                      4

The Landrys then intervened themselves in the Juvenile Court proceeding.[23]   On October 1, 2019, the court conducted a hearing regarding the Landrys' intervention and ordered that Baby Z not be removed from placement with the Landrys.[24]   At a hearing in December 2019 Thomas is alleged to have testified that the Landrys were not participating in daily Facetime calls with the child's uncle.[25]   The Landrys also allege that Thomas testified that Baby Z had been placed in day care without her knowledge but that they had sent her a prior e-mail providing that information.[26]   During a court-ordered visit between the baby and his uncle in New York in January 2020, Thomas is alleged to have "coached" the child's uncle on what he would need to prove that the child could be transitioned to New York.[27]

In May 2020, the Louisiana Fifth Circuit Court of Appeal overturned the Juvenile Court's ruling from October 2019 and held that the juvenile judge had exceeded his legal authority by prohibiting DCFS from transferring Baby Z to the custody of his uncle in New York.[28]   The Juvenile Court ultimately ordered that Baby Z be transferred into the custody of his uncle.

The Landrys allege that Thomas then accompanied Baby Z on a visit to his uncle New York.[29]   They allege that Thomas told DCFS' expert that Baby Z was excited to see his uncle in New York but claim that this was in fact not the case.[30]   This is the Landrys' final allegation against Thomas.

---

[23] *Id.*, ¶ 64.
[24] *Id.*, ¶
[25] *Id.*, ¶ 69.
[26] *Id.*, ¶ 70.
[27] *Id.*, ¶¶ 75-76.
[28] *Id.*, ¶ 81.
[29] *Id.*, ¶ 87.
[30] *Id.*, ¶ 91.

The Landrys allege that they discussed their story with a reporter for *The Times-Picayune*, which published a story about their experience in July 2020.[31]  They allege that one day later, an unidentified person from DCFS informed them that they would have no further contact with Baby Z.[32]  Finally, they allege that they attempted to reinstate visitation again two months later and that they were targeted with a Temporary Restraining Order.[33]

**LAW AND ARGUMENT**

I.     **Walters is entitled to Eleventh Amendment immunity because a suit against a State official in her official capacity is equivalent to a suit directly against the State.**

The State of Louisiana is immune from suit in federal court under the Eleventh Amendment to the U.S. Constitution, which bars actions in federal court against a state or state agency unless a state has consented to be sued or Congress has clearly and validly abrogated the immunity.  *See*, e.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 456 U.S. 89, 100 (1984); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  Plaintiffs have named Walters as a defendant solely in her "official capacity as Secretary of the Louisiana State Department of Child (sic) and Family Services."[34]   Plaintiffs' claims against Walter, a government agent, in her official capacity are "nothing more than a suit directly against [a] sovereign."  *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999).  Walters is therefore

---

[31] *Id.*, ¶ 99.

[32] *Id.*, ¶ 100.

[33] *Id.*, ¶ 102.

[34] Paragraph 2 of the Complaint does not specify that Walters is being sued only in her official capacity, but both the caption of the Complaint and the summons served on Walters specify that she was named and served solely in her official capacity.  See R.Doc. 11.  Counts one and two of the Complaint similarly refer to Walters and DCFS interchangeably as "Marketa Garner Walters/DCFS."  R.Doc. 1, pp. 15-16.  The ECF docket itself refers to "Department of Child and Family Services State of Louisiana" as the defendant and not Walters, presumably because that was the party identified during the electronic filing of the suit.

entitled to claim Eleventh Amendment immunity from all of Plaintiffs' claims unless some exception to immunity applies.  None do.

42 U.S.C. § 1983, which provides the statutory basis for Plaintiffs' First Amendment retaliation claim against Walters, does not abrogate a state's sovereign immunity.  *Will v. Michigan Dept't of State Police*, 491 U.S. 58, 66 (1989); *Hanna v. LeBlanc*, 716 Fed.Appx. 265, 268 (5th Cir. 2017).  Walters, in her official capacity as a state official, is not a "person" amenable to suit under Section 1983.  *Will*, 491 U.S. at 71.  Plaintiffs' First Amendment retaliation claim against Walters must therefore be dismissed.

Plaintiffs' claims of failure to train/supervise and infliction of emotional distress by Walters must likewise be dismissed.  By statute, Louisiana has refused to waive its sovereign immunity from being sued for state law claims in federal court.  *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 281 (5th Cir. 2002) (citing La. R.S. 13:5106(A), which provides: "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.").

Walters declines to waive Eleventh Amendment immunity in this matter.  She therefore must be dismissed pursuant to F.R.C.P. 12(b)(1) because this Court lacks subject matter jurisdiction over any of the claims asserted against her.

**II.      Plaintiffs fail to state any claim against Thomas upon which relief can be granted.**

Plaintiffs name Thomas in two counts in their complaint.  First, Plaintiffs allege that Thomas retaliated against them based on the Plaintiffs' exercise of First Amendment rights.[35] Second, Plaintiffs allege that Thomas is liable for either intentional or negligent infliction of

---

[35] R.Doc. 1, ¶ 104-09.

emotional distress against them.[36]   Defendants will discuss intentional and negligent infliction

of emotional distress separately, as different tests apply to each.

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a plaintiff's

complaint for failure to state a claim upon which relief may be granted. When considering a

Rule 12(b)(6) motion, "[a]ll well-pleaded facts are viewed in the light most favorable to the

plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in

order to make out a valid claim."  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53

(5th Cir. 2010).   To avoid dismissal, a plaintiff must plead "sufficient facts to 'state a claim to

relief that is plausible on its face.'"  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    A claim is plausible only "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Factual allegations must cross "the line from conceivable to plausible" and must be more than

"merely consistent" with the elements of a claim—they must "plausibly suggest" the

satisfaction of those elements.  *Iqbal*, 556 U.S. at 680, 682; *Twombly*, 550 U.S. at 557.    Courts

"do not accept as true conclusory allegations, unwarranted factual inferences, or legal

conclusions."  *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

A. **Plaintiff has stated insufficient facts to support any claim against Troy Thomas personally, rather than DCFS (which is immune from this suit under the Eleventh Amendment), for First Amendment Retaliation.**

The First Amendment prohibits not only direct limits on individual speech but also

adverse government action against an individual in retaliation for the exercise of protected

---

[36] R.Doc. 1, ¶ 117-26.

speech activities.  *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keeenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).  To establish a First Amendment retaliation claim, a plaintiff must show that (1) he or she was engaged in a constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.  *Id.*  With respect to the second element, in order to demonstrate a showing of injury, a plaintiff must show that his exercise of free speech has been curtailed.  *Keenan*, 290 F.3d at 259.

The Landrys appear to claim that they engaged in two alleged activities protected by the First Amendment:  (1) "exercising their right to Petition the Court" and (2) "speak[ing] out to the press[.]"[37]  The second activity clearly relates to their speaking to a newspaper reporter in July 2020.  The first is less clear from the face of the Complaint—for the sake of argument Defendants will assume that the Landrys are referring to the petition for intervention they filed in Baby Z's juvenile court case.  While the Complaint does not identify the date that the petition was filed, on information and belief said petition was filed on September 5, 2019.

To the extent that the First Amendment claim against Thomas is premised on the filing of the petition for intervention, the claim fails on every element.  The mere act of filing a lawsuit against the government—or in this case, not even filing a lawsuit against the government, but even more narrowly intervening in a Juvenile Court proceeding involving a child in the custody of the government—does not in and of itself create a matter of public concern.  The law is clear that a lawsuit purely addressing matters of personal and private

---

[37] *Id.*, ¶ 105.

concern does not give a plaintiff a later cause of action for First Amendment retaliation. *See*

*Gibson v. Kilpatrick*, 838 F.3d 476, 483-84 (5th Cir. 2016) (citing to collected cases).   The

Landrys allege that they filed an intervention into a matter involving a child in the custody of

DCFS—in a Juvenile Court, where the pleadings are not open and available to access by the

general public, such that the public was informed of their claims as a matter of public concern.

The intervention was not public speech protected by the First Amendment.  With respect to the

second element, Plaintiffs have not alleged injury resulting from the filing of the intervention—

namely, they have not alleged that their rights to speech were curtailed in any way as required.

*See Keenan, supra*.  They describe no act by Thomas specifically (given that DCFS itself is not a

defendant) to curtail their speech at all.  Third, there is no allegation, nor any inference which

may be drawn from the alleged facts, that anything Thomas did after September 5, 2019, had

anything to do specifically with their intervention in the court proceedings or any attempt to

limit the exercise of their First Amendment rights (as they clearly continued to litigate the

matter in Juvenile Court).

To the extent that the First Amendment retaliation claim against Thomas is premised on

the newspaper report, Plaintiffs allege that the report was published in July 2020.[38]   The

Complaint alleges no acts whatsoever by Thomas individually occurring after July 2020, much

less any act that could be considered retaliatory; therefore, on its face the Complaint fails to

plead any viable claim against Thomas personally related to the newspaper report.  All First

Amendment claims should be dismissed, with prejudice.

---

[38] R.Doc. 1, ¶ 99.

**B. Alternatively, Troy Thomas is entitled to qualified immunity against Plaintiffs' Section 1983 claims of First Amendment retaliation.**

Thomas, as a State government employee, will assert qualified immunity as an affirmative defense to Plaintiffs' Section 1983 claims.  Qualified immunity protects government officials from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).  When a defendant invokes qualified immunity, as Thomas does here, the burden shifts to Plaintiffs to demonstrate the inapplicability of the defense.  *Id.*

To evaluate whether a government official is entitled to qualified immunity, the Court conducts a two-prong inquiry:   (1) whether the facts, accepting the plaintiffs' version of disputed facts as true, constitute a violation of a constitutional right, and (2) whether the government official's conduct was "objectively reasonable in light of clearly established law." *Id.* (citing *Thompson v. Upshur Cnty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001)).  A government official's acts are not objectively unreasonable unless "all reasonable officials in the defendant's circumstances would have known that the defendant's conduct violated the plaintiff's rights." *Id.*  "Clearly established law" must be "particularized to the facts of a case."  *Samples v. Vadzemnieks*, 900 F.3d 655, 662 (5th Cir. 2018).  While this does not require a prior case "directly on point," "precedent must still put the underlying question beyond debate."  *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

Plaintiffs' First Amendment claim against Thomas, to the extent any exists at all, appears to be based on their contention that Thomas actively assisted in the adoption of Baby Z by his blood relative in New York.  Plaintiffs disagree with Thomas's statements that the child did well during visits with his uncle.  For the purposes of the qualified immunity, there is no clearly

{01133492 - v1}                                    11

established case law which could have placed Thomas or any other government official that her

actions in these regards violated any First Amendment rights of the Plaintiffs.  No reported case

law has held that an adoption case worker violates the First Amendment rights of foster

parents who intervene into a child custody proceeding by seeking the placement of a child with

blood relatives rather than the foster parents.  The actions described in the Complaint appear

to be unrelated to speech at all.  While Plaintiffs' clearly disagree with certain actions and

statements that they allege were done or made by Thomas, that does not provide them with a

First Amendment constitutional claim which would overcome an assertion of qualified

immunity.  There is no doubt that Thomas is entitled to dismissal of Plaintiffs' Count One, with

prejudice, based on qualified immunity.

> **C. Plaintiffs do not state a viable claim for intentional infliction of emotional distress against Troy Thomas under the heavy burden imposed by Louisiana law.**

To state a claim of intentional infliction of emotional distress against Thomas, Plaintiffs

must show that (1) the conduct of Thomas was extreme and outrageous, (2) the emotional

distress suffered by Plaintiffs was severe, and (3) Thomas desired to inflict severe emotional

distress or knew that severe emotional distress would be certain or substantially certain to

result from her conduct.  *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991); *Lincoln v.*

*Mendler*, 2018 U.S. Dist. LEXIS 150018, at *7 (E.D.La. Aug. 31, 2018) (Lemelle, J.) (citing *White v.*

*Monsanto).*  "The conduct must be so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community."  *Id.*  "Liability does not extend to mere insults, indignities,

threats, annoyances, petty oppressions, or other trivialities." *Id.* The distress suffered "must be such that no reasonable person could be expected to endure it." *Id.* at 1210.

According to the Fifth Circuit, Louisiana has set "a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Morris v. Dillard Dep't Stores, Inc*., 277 F.3d 743, 756-56 (5th Cir. 2001). Regarding the severity of emotional distress sustained by a plaintiff, the Fifth Circuit has noted that the distress must be "unendurable." *Smith v. Amedisys Inc.,* 298 F.3d 434, 450 (5th Cir. 2002).

The factual assertions against Thomas fail to satisfy this especially burdensome standard.   While Plaintiffs' make conclusory allegations that Thomas's alleged acts were "malicious" or "malevolent" towards them, the acts described in the facts pled do not support a reasonable inference to be drawn by the Court, as required by the U.S. Supreme Court in *Ashcroft*, *supra*,  that Thomas's actions were "beyond all possible bounds of decency" or "atrocious and intolerable in a civilized community."   The law provides an extremely heavy threshold which Plaintiffs' allegations against Thomas simply do not meet.   Their claims of intentional infliction of emotional distress against Thomas must be dismissed, with prejudice.

### D. Plaintiffs state no viable claim for negligent infliction of emotional distress by Troy Thomas because she owed no special direct duty to them and her conduct was not outrageous.

Plaintiffs finally allege that Thomas is liable to them for negligent infliction of emotional distress ("NIED").   Plaintiffs have not alleged any physical injuries in their complaint, only mental distress.   Under Louisiana law, this claim is only viable in cases involving "special

circumstances" or "outrageous conduct."   Neither of these exceptions applies in the instant case.

> For Plaintiffs to state claims for NIED, they must show that:
>
> (1) [Troy Thomas] had a duty to confirm … her conduct to a specific standard of care (the duty element); (2) [Thomas] failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) [Thomas's] substandard conduct was a cause-in-fact of the [plaintiffs'] injuries (the cause-in fact-element); (4) [Thomas's] substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

*Covington v. Howard*, 49,135 (La. App. 2 Cir. 8/31/14), 146 So.3d 933, 937; *Lincoln v. Mendler, supra,* at *10 (citing *Covington v. Howard).*   In a case such as the instant matter, in which NIED claims are unaccompanied by physical injury, recovery is limited only to facts constituting "special circumstances" involving an especial likelihood of "real and serious mental distress arising from the particular circumstances."  *Covington*, 146 So.2d at 937 (citing *Moresi v. State Through Dept. of Wildlife & Fisheries*, 567 So.2d 1081 (La. 1990)).  Louisiana case law following the Louisiana Supreme Court's ruling in *Moresi* has limited recovery for NIED to cases which involved conduct that was "outrageous" because the defendant breached a special direct duty to the plaintiff and where the resulting mental distress suffered was "easily associated with the defendant's conduct."  *Covington*, 146 So.2d at 938-99 (collecting cases).

Although Plaintiffs' Complaint describes an unfortunate situation in which they were distressed about the permanent placement of Baby Z, this case does not fall within the "special circumstances" or "outrageous conduct" standard set forth in Louisiana law.  The primary duty owed by Thomas and by DCFS at large in this case was owed ***to Baby Z***, to ensure and promote the child's welfare and place him in an appropriate permanent home*.*

As Plaintiffs themselves acknowledge in a footnote on page 16 of their Complaint, they lack legal or procedural capacity to bring any claim on behalf of Baby Z for any mental distress sustained by Baby Z himself.   While the care provided by Plaintiffs to Baby Z is beyond admirable and commendable, Thomas individually owed no duty directly to Plaintiffs in processing the permanent adoptive placement for the child, particularly where blood relatives of the child had begun taking steps to take custody of the child in New York.   Plaintiffs allege that the original foster care worker, Gerriane Jones, failed to make them aware that the uncle was interested but Jones's alleged actions have nothing to do with Thomas, the actual defendant in this case.   Plaintiffs have not alleged any actions by Thomas which are objectively "outrageous" which would trigger any liability for NIED.   The most substantial delays in the child's transition to his uncle's home in New York appear to have been caused by Plaintiffs' litigation and the state Fifth Circuit's nine month delay in overturning the Juvenile Court judge's legally erroneous order prohibiting the removal of Baby Z from the Plaintiffs' home.   Their claims for NIED against Thomas must therefore be dismissed, with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants pray that all claims asserted against Marketa Garner Walters, named as a defendant to this lawsuit solely in her official capacity as the Secretary of DCFS, be dismissed for lack of subject matter jurisdiction based on the invocation of Eleventh Amendment Immunity.   Defendants further pray that all claims asserted against Troy Thomas individually be dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have failed to state a single claim against her upon which relief can be granted.

Respectfully Submitted,

**JEFF LANDRY**
**Attorney General**
**State of Louisiana**


By:     */s Gregory C. Fahrenholt*
**DENNIS J. PHAYER (La. Bar No. 10408)**
**GREGORY C. FAHRENHOLT (La. Bar No. 28572)**
**BURGLASS AND TANKERSLEY, L.L.C.**
5213 Airline Drive
Metairie, Louisiana 70001-5602
Direct Dial Phone: (504) 836-0408
Telefax: (504) 287-0448
Special Assistant Attorneys General

Attorneys for Defendants,
Marketa Garner Walters, in her official capacity as
Secretary of the State of Louisiana Department of
Children and Family Services, and Troy Thomas